THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICK YOUNG, Defendant-Appellant.

First District (2nd Division)   No. 77-25

Opinion filed April 11, 1978.

James J. Doherty, Public Defender, of Chicago (Justine Knipper, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

After a jury trial, defendant was convicted of battery (Ill. Rev. Stat. 1975, ch. 38, par. 12—3) and sentenced to a term of one year conditional discharge (Ill. Rev. Stat. 1975, ch. 38, par. 1005—1—4). He appeals from his conviction, arguing that he was not convicted beyond a reasonable doubt, and that he was denied a fair trial when the State introduced evidence of an undisclosed oral statement he was alleged to have made to the police shortly after his arrest.

Although defendant has raised reasonable doubt as an issue in this appeal, because of the nature of our disposition of this case, it is unnecessary to here set forth in detail the evidence adduced at trial. Briefly, the evidence showed that the alleged battery occurred during a street fracas at approximately 10:30 p.m. on Sunday, August 1, 1975. For some time prior to that date, defendant's father, Steven Young, was involved in a dispute with his brother, James Young. At approximately 10:30 p.m. that night, Steven Young and his cousin, Miller Ristich, were having a drink in a corner bar near 4600 N. Western Avenue in Chicago. Miller's son, Jimmy, ran into the bar and said James was outside arguing with his mother, Mary Ristich, and Steve's wife, Mary Young. Jimmy told them James had a gun and that he was looking for them. Miller ran out of the bar, and Steve called the police.

Chicago police officers Tait, Fiorenzo, Zerwin, and Grano were among the officers who responded to a call that there was a man with a gun in the vicinity of 4600 N. Western. When the officers arrived, they observed a large and highly agitated crowd gathered on the sidewalk. The officers drew their guns and exited their squad cars. At this point, defendant ran from the crowd toward the police officers. He himself testified that he said to them, "Hey m____ f____, put your guns down. What's wrong with you bastards? There's kids around here." The police officers testified to slightly differing accounts of the exact words used by defendant, but all related the same basic theme.

It is at this point that the stories related by the police and by the defendant diverged. The police officers testified that after defendant had so greeted them, they took him by the arms and began to lead him away from the crowd. Fiorenzo told him he was under arrest for disorderly conduct. Defendant then attempted to break away from the officers' grasp. In the process, he struck Fiorenzo in the chest. The officers attempted to subdue defendant. Suddenly, the crowd turned on them. Men, women, and children jumped on the officers' backs—hitting, kicking and biting them. With the help of other police officers responding to the

call, the police were able to overcome defendant, and the crowd backed off. During the encounter, one of the officers struck defendant in the head with his gun.

The evidence presented by the defense was that the police officers, in order to vent a racial bias against gypsies, used the occasion to engage in some police brutality. Steve Young testified that within seconds of his call to the police, seven or eight squad cars arrived simultaneously, and from all directions. At least 15 officers, their guns drawn, got out of the cars. Other police cars arrived minutes later. By the time the incident ended, there were 35 or 40 police officers at the scene. Horrified by the dramatic arrival of the police in such strength and numbers, and because there were a number of children present, the crowd became hysterical. When defendant, in his polite manner, requested that the officers put their guns away, Tait grabbed defendant's father from behind, flipped him, and gave him a karate chop. Tait then put a gun to Steve's head and said, "You m____ f____ black Gypsy, you move one time, freeze, I will blow your brains out." Five or six other officers descended upon defendant, knocked him to the ground, put his arms behind his back, and started hitting him with a gun. Rosie Ristich, Miller's daughter (and now defendant's wife), got between Officer Fiorenzo and defendant and was struck across the rib cage by the former. Michelle Young, defendant's sister, was also struck in the chest by Fiorenzo when she begged him to stop beating defendant. Other officers held Miller and Mary Young back, while others even held a gun on 13-year-old Jimmy.

James Young, the man with the gun, apparently departed from the scene unnoticed.

## I.

Prior to trial, counsel for defendant filed a motion for discovery in which he requested a copy of any written confession made by defendant, a list of witnesses to the making of any such written confession, and a list of witnesses to the making of any oral confession by defendant. Immediately prior to trial, defense counsel became aware of an oral statement alleged to have been made by defendant to the police to the effect that: "It was all my fault." The trial court indicated it would allow defendant a continuance to prepare to meet that evidence, but that he would permit its use. Subsequently, the dispute was resolved when the State agreed not to use the statement.

At trial, while Officer Zerwin was being examined by the State, the following exchange took place between the witness, counsel, and the court:

> "Q. Now, after you read defendant his rights, did anything further take place or was anything further said?

A. I told him I said he put himself in a lot of trouble.

Q. And did he make any response to that?

A. He said yes, it worked. I said, 'What worked?'

Q. And what did he respond, if anything?

A. He said that he purposely engaged the police officers—

MR. THOMPSON: I object, your Honor. May I be heard on this?"

In chambers, counsel for the defendant moved for a mistrial, arguing that the statement was not provided in response to his discovery motion, and that he was not previously made aware of its existence. The court denied counsel's motion for a mistrial, but held that the statement could not be used. The trial court thereupon admonished the jury to disregard the statement.

On appeal, the State has not attempted to justify use of the statement. Instead, the State has argued that defendant was not prejudiced by the statement. We disagree. The purpose of section 114—10 ("Motion to Produce Confession") of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—10) and of Supreme Court Rule 412(a)(ii) (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(ii)), which require disclosure of such statements and confessions to the accused, is to provide a defendant with protection against surprise, unfairness, and inadequate preparation, as well as to afford the defense an opportunity to investigate the circumstances surrounding a statement. See *People v. Shegog* (3d Dist. 1976), 37 Ill. App. 3d 615, 617, 346 N.E.2d 208, and cases cited therein.

■■ There is no excuse for the failure of the State to fully and timely comply with the requirements of the statute and discovery rules. (*People v. Szabo* (1st Dist. 1977), 55 Ill. App. 3d 866, 870-71, 371 N.E.2d 117.) It is no excuse to say the police did not advise the State of the statement. The police department must fully participate in providing its evidence to the state's attorney in order that discovery can be accomplished. A timely compliance is not when the trial commences or during the trial. Assuming the discovery motions meet the provisions of the statute and rules, trial courts should require expeditious compliance. Thus everyone's time is saved, the defendant knows what is discoverable, and the judicial system is not clogged with unnecessary error.

■■ There is nothing in the record to suggest that defense counsel was apprised of this statement prior to the time the State introduced it at trial. Furthermore, the statement was clearly inculpatory, even though only a portion of the complete statement was apparently heard by the jury. The import of the statement was that defendant had deliberately provoked the police officers for a particular purpose known only to him. In a case where the credibility of the witnesses was the paramount issue, the

potential impact of such evidence on the jury is incalculable. Under these circumstances, the trial court's admonition to the jury was insufficient to overcome the potential prejudice to the defendant. *People v. Shockey* (1964), 30 Ill. 2d 147, 152, 195 N.E.2d 703; *People v. Washington* (2d Dist. 1976), 41 Ill. App. 3d 475, 481, 354 N.E.2d 501.

We note the similarity between the facts of the instant case and *People v. Shegog* (3d Dist. 1976), 37 Ill. App. 3d 615, 346 N.E.2d 208. In *Shegog*, the Third District reversed a defendant's conviction for burglary and remanded for a new trial because the State introduced evidence of an undisclosed oral confession by the defendant. (37 Ill. App. 3d 615, 619.) The only distinguishing feature between the two cases is that Shegog was tried by the court, whereas defendant herein was tried before a jury. However, this distinction alone provides a compelling reason for defendant's conviction to be reversed and remanded for a new trial.

Because defendant will be retried, it would be inappropriate for us to address the issue of whether he was convicted beyond a reasonable doubt.

Reversed and remanded for new trial.

STAMOS, P. J., and PERLIN, J., concur.