THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARA MAE MILES, Defendant-Appellant.

First District (5th Division)   No. 78-1938

Opinion filed March 28, 1980.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendant, Clara Mae Miles, was charged by information with the crime of murder. Following a jury trial, defendant was convicted of voluntary manslaughter and sentenced to not less than two years nor more than six years. She contends on appeal that: (1) she was denied a fair trial

by police testimony and comments by the State in closing argument regarding her prejudicial statement, when it was not provided to the defense before trial in violation of Illinois Supreme Court Rule 412 (Ill. Rev. Stat. 1975, ch. 110A, par. 412) and section 114—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—10); (2) she was denied a fair trial by police testimony and remarks by the State during closing argument that violated her privilege against self-incrimination and constituted an impermissible comment on constitutionally protected silence; and (3) she was not proved guilty of voluntary manslaughter beyond a reasonable doubt. We reverse and remand on the first two issues.

At about 10 p.m. on November 9, 1975, Officers Thomas O'Donnell and Roland Thiede, after receiving a radio communication, proceeded to defendant's apartment. Upon arrival, they observed defendant and Bobby Lane, the victim, standing in the doorway of the apartment. Lane had a towel wrapped around his left hand, which covered a cut. At this time, defendant did not have any cuts or bruises on her face or body. Since Lane did not want to file a complaint against defendant, the officers left defendant's apartment without making any arrests.

At approximately 10:30 p.m., the same officer received a second radio communication and again went to defendant's apartment. Defendant was in the hallway of the apartment and said to the officers, "I have just stabbed him. I stabbed him and he is on the floor." Officer O'Donnell testified that he entered the first room of the apartment and observed the body of Bobby Lane, lying face down on the floor. O'Donnell turned Lane's body over and ascertained that he was dead. Defendant, in response to a question by O'Donnell about the weapon used during the stabbing, replied that she had stabbed him with a knife which was on the counter in the kitchen. Officer O'Donnell went to the kitchen and found a blood-stained kitchen knife on the counter covered with roaches. He also noticed blood stains on the living room, bedroom and hallway floors. Further, he examined decedent and observed several punctures through the shirt and skin on his chest and a cut on the back of his left hand. On his first visit to the apartment, he had observed that both defendant and decedent had been drinking but neither of them appeared unsteady nor were there any speech defects. He further stated that defendant had told him that she stabbed the decedent because they were arguing over a bottle of vodka. He admitted, however, that he had never written that in the police report and instead had written that decedent was stabbed during a "domestic altercation." He explained that in using the term "domestic altercation," he meant an "argument or fight." Moreover, he asserted that defendant never told him about being struck by decedent with a belt at the time of the stabbing.

At approximately 11 p.m. on November 9, Officer John Leonard visited the hospital to examine the body of decedent. He then went to defendant's apartment where he saw blood stains in the living room and hall and a large amount of blood in the bedroom. Thereafter, he and Officer James Sesso went to the police station sometime after midnight to interview defendant. Defendant told them that she and the decedent had been drinking during the day; that they argued in the bedroom and she went to the kitchen and got a knife. The decedent then threatened to hit her with a belt and she stabbed him. He fell to the floor immediately after she stabbed him.

Officer Leonard further stated that at the time, he noticed nothing unusual about her face or arms; however, she did have a laceration at the nail of the middle finger of the right hand. He admitted on cross-examination that defendant told him she was hit with a belt by decedent. While at the apartment, Officer Leonard also talked to Way Gailey, defendant's uncle, who was heavily intoxicated.

At trial, defendant presented evidence in her own behalf asserting that on November 9, 1975, she and decedent began drinking at approximately noon. The decedent became violent when he drank and would often beat her. He also bragged about killing a man and beating women in Indiana. At approximately 4 p.m. defendant, decedent, Way Gailey and others were playing cards and drinking in the apartment of Ernestine Vaughan, who lived across the hall. While there, defendant and decedent began arguing and he hit her twice. Afterwards, she and decedent returned to her apartment where he struck her with a belt buckle. At about 10 p.m., she called the police and asked them to remove decedent because he was beating her with a belt buckle. The police arrived, laughed at her and left. After the police had gone, decedent threatened to kill her. She ran to the kitchen and obtained a knife. She went into the dining room and he came after her and tried to choke her with the belt he was using to beat her. As he put the belt around her neck, he lunged into the knife and the belt fell. She then ran to Vaughan's apartment to call the police.

Prior to trial, defendant filed a motion to produce statements and a motion for discovery. (Ill. Rev. Stat. 1975, ch. 38, par. 114—10 and ch. 110A, par. 412(a)(ii).) After the defense rested, the State presented rebuttal witnesses. Following closing arguments, the jury returned a verdict of guilty of voluntary manslaughter and the trial court entered judgment on the verdict. Defendant now appeals.

OPINION

■■ Defendant first contends that the State's failure to comply with the mandatory disclosure requirements of Supreme Court Rule 412(a)(ii) and

section 114—10(a)(c) of the Illinois Criminal Code resulted in prejudice to her by denying her a fair trial. We agree.

Supreme Court Rule 412 provides in part:

"(a) * * * [T]he State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

* * *

(ii) Any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgement of such statements." (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(ii).)

Under Supreme Court Rule 412(a)(ii), the State is required to disclose not only confessions as required by section 114—10(c) of our Code of Criminal Procedure, but any and all statements known to it, which have been made by the accused. (*People v. Watkins* (1975), 34 Ill. App. 3d 369, 340 N.E.2d 92.) Defendant also relies on the provisions of section 114—10 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 114—10), which requires that the State, in the case of an oral confession and on motion of the defendant, furnish a list of the witnesses to the making of the confession.

■ The purpose of Supreme Court Rule 412(a)(ii) and section 114—10 of the Code of Criminal Procedure is to provide a defendant with protection against surprise, unfairness and inadequate preparation, as well as to afford the defense an opportunity to investigate the circumstances surrounding a statement. (*People v. Boucher* (1978), 62 Ill. App. 3d 436, 379 N.E.2d 339; *People v. Young* (1978), 59 Ill. App. 3d 254, 375 N.E.2d 442; *People v. Shegog* (1976), 37 Ill. App. 3d 615, 346 N.E.2d 208.) Compliance with the statute and the discovery rule is mandatory (*People v. Musgray* (1976), 37 Ill. App. 3d 48, 344 N.E.2d 708; *People v. Szabo* (1977), 55 Ill. App. 3d 866, 371 N.E.2d 117), being excused only if the prosecutor was unaware of the existence of the statement prior to trial and could not have become aware of it in the exercise of due diligence (*Shegog*).

In the present case, during the cross-examination of Officer Stephen Boska, the following colloquy occurred:

"MR. ELLIS: When Officer O'Donnell took charge of the investigation you were relieved of your responsibility with reference to that investigation, isn't that correct?

A. Yes, sir. We were still there to assist him, though.

Q. And did Officer O'Donnell—he didn't take any statements in the apartment, is that correct?

A. To my knowledge, he did not.

Q. And so the first time there was any talk about any statement was when you had Clara Miles in the squad car?

A. No. Actually, the first thing that was said was when I was walking up the stairs.

Q. When you were where?

A. Walking up the stairs towards the apartment.

Q. What was said then?

A. She said, 'I killed the m_____ f_____ because he was stupid.'

Q. Is that what she said?

A. That's what she said.

Q. Where do you have that in the case report?

A. I don't have that in the case report."

Officer Joseph Gawlik subsequently testified on rebuttal for the State, in pertinent part, as follows:

"MR. LAMBERT: Now, Officer Gawlik, as you were proceeding to the third floor apartment at that address would you please relate to the ladies and gentlemen of the jury what occurred?

A. As I was going up the stairs I—

MR. ELLIS: Your Honor, I object to the question as being too general.

THE COURT: Overruled.

THE WITNESS: As I proceeded up the stairs I was following my partner up, right basically behind him or alongside of him, and as we were approaching the third floor coming up the stairs there was a woman standing at the top of the stairs. She stated to us—

MR. ELLIS: Objection, your Honor, as to what she stated.

THE COURT: Overruled.

THE WITNESS: She stated, 'He's in here,' making a motion or a gesture to the apartment, and then said, 'I killed the m_____ f_____ because he was stupid.' "

■ Defendant argues that this testimony of Officer Boska on cross-examination and Officer Gawlik on rebuttal regarding defendant's statement that "she killed the m_____ f_____ because he was stupid" was improper because the substance of this oral confession was not provided to the defense in violation of defendant's discovery requests. The State supplied a list of witnesses to the statement, and referred to the police report. The police report stated that defendant had admitted "that during an argument she stabbed the victim several times in the chest and stomach." However, Officer Boska's testimony as to her alleged inflammatory remark was radically different than the substance of the statement contained in the police report. Furthermore, the prosecutor told the court that defense counsel had been given "everything she said."

It is obvious that although defense counsel had available the remark written in the police report, he was not aware of the statement testified to by Officer Boska. The State's response to defendant's discovery motion, therefore, failed to satisfy the requirements of Rule 412(a)(ii) in that the report did not adequately disclose that part of defendant's alleged oral confession which was most prejudicial to her at trial.

Additionally, the State failed to meet other requirements of the statute (Ill. Rev. Stat. 1975, ch. 38, par. 114—10), and Rule 412 (Ill. Rev. Stat. 1975, ch. 110A, par. 412(a)(ii), because although the State listed a general list of witnesses, the defense was not provided with a specific list of witnesses to the oral statement as required by the statute and the rule. Nevertheless, the State posits that the defense was supplied with all information that the prosecutors were aware of or was in their possession or control. Under Supreme Court Rule 412(a)(ii), compliance with a demand for the production of confessions or statements is excused only where the court is satisfied that the prosecutor was unaware of the existence of the statement prior to trial and could not have become aware of it in the exercise of due diligence. (*People v. Shegog* (1976), 37 Ill. App. 3d 615, 346 N.E.2d 208.). We reject the position of the State that the Assistant State's Attorneys in the case were unaware that the undisclosed statement existed and was in police possession. We believe that the omission could have been supplied by the exercise of due diligence. We point out that it is the duty of the State to see that there is a proper flow of information between the various branches and personnel of its law enforcement agencies and its legal officers. (Ill. Rev. Stat. 1975, ch. 110A, par. 412(f).) The omission of Officers Boska and Gawlik to make known the confession to the prosecutor must, therefore, be chargeable to the State. (*People v. Young* (1978), 59 Ill. App. 3d 254, 375 N.E.2d 442.) The required flow of information was insufficient in this case and the goal of pretrial discovery, which is to promote the fact-finding process, was not met.

Additionally, it is apparent that the exercise of ordinary diligence by the Assistant State's Attorneys should have made them aware of the alleged confession. Since Boska and Gawlik were on the State's list of witnesses, they should have been questioned by the Assistant State's Attorneys before trial to ascertain what their testimony would be. Supreme Court Rule 415(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 415(b)) provides that both the prosecutor and defense counsel have a continuing duty to disclose discoverable material if it comes to their attention after pretrial discovery has been completed. Thus, even if the Assistant State's Attorneys had found out about the confession only just before trial, they had a duty to disclose it.

■■ The State next argues that, regardless of any failure to comply with discovery, the alleged statement made by defendant cannot be error because it was elicited by defendant on cross-examination. We disagree. In support of its position the State cites several cases which stand for the propositions that the State is not responsible for questions asked by counsel for the defense or for the answers to such questions by the State's witnesses; and if defendant produces, invites or acquiesces in the admission of improper evidence, he cannot complain. (*People v. Henry* (1954), 3 Ill. 2d 609, 122 N.E.2d 159; *People v. Burage* (1961), 23 Ill. 2d 280, 178 N.E.2d 389; *People v. Villalobos* (1960), 20 Ill. 2d 315, 169 N.E.2d 745, and *People v. Gray* (1965), 57 Ill. App. 2d 221, 206 N.E.2d 821.) These cases, however, are distinguishable on their facts from the present case. First, all the cases involve conclusions by the court that the trial court was under no obligation to exclude or stop the introduction of improper evidence on cross-examination where defense counsel does not object, or move to exclude it. Secondly, they contain facts amounting to acquiescence by defense counsel in the admission of the improper testimony. In the case at bar, however, defense counsel moved to have the oral statement, allegedly made by defendant as testified to by Officer Boska, stricken and to have the jury instructed to disregard it. This motion, however, was denied by the court. We think the initial testimony of Officer Boska referring to defendant's statement should have been stricken.

■■ The State further contends that its use of the profane statement in rebuttal was proper because it was precipitated by defendant, who voluntarily took the stand and denied making the statement. Therefore, Officer Gawlik's testimony in rebuttal was directed at defendant's credibility. The State also embellished and emphasized defendant's remarks in closing argument. We believe that the discovery violation of the State cannot be taken advantage of through the use of rebuttal testimony since the violation undoubtedly precipitated defendant's testimony denying the statement. Clearly, defense counsel would not have cross-examined Officer Gawlik concerning a statement he had no knowledge of.

Both Officers Boska and Gawlik testified that defendant's profane remark made such an impact on them that they would remember it for the rest of their lives. We are persuaded that the impact of the repeated exposure of such statements to the jury may have contributed to the verdict of guilty in this case and that defendant was prejudiced by the State's use thereof.

Secondly, defendant asserts that the police officer's testimony and the prosecutor's comments on defendant's failure to offer her self-defense

explanation at the time of her arrest violated her privilege against self-incrimination and denied her a fair trial under the doctrine of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.

Officer Boska testified that he and Joseph Gawlik transported defendant to the police station and that he advised the defendant as to her constitutional rights at the time. Further, he testified, in relevant part, as follows:

"Q. At any time did the defendant say anything to you that you can recall in the car?

A. No.

❋ ❋ ❋

Q. Did the defendant ever tell you she had been beaten or struck? Did she mention a belt to you at any time?

MR. ELLIS: Your Honor, I object to leading the witness.

THE COURT: Overruled. He may answer.

THE WITNESS: No, she didn't mention anything like that.

Q. Did she ever—did she mention a belt to you?

A. No, she did not.

Q. Did she ever inform you that she had been struck by any other individual in her apartment shortly before you arrived?

A. No.

❋ ❋ ❋

Q. Did the defendant mention anything to you about being struck, beaten or harmed by another individual at 4807 West Washington?

MR. ELLIS: Your Honor, I object to repeating the same question over and over again.

THE COURT: He may answer.

THE WITNESS: No."

During cross-examination of defendant, an Assistant State's Attorney asked her whether she told either officer in the police car that she had been beaten. She responded that she did not tell them anything until she got to the police station. Defendant was then asked whether she told either policeman in the car that decedent had struck her with a belt. She replied that she told the police when questioned at the station.

In closing argument, the State further emphasized that the oral statement given by defendant in the police station which described decedent's physical abuse of her was hours after the event and after she had time to think.

Defendant has characterized this testimony and these remarks as comments on her post-arrest silence after she had been read her *Miranda* warnings. (See *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694,

86 S. Ct. 1602.) In view of the rationale of the court in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, we are compelled to agree.

The State opines that the testimony and comments did not violate the *Doyle* doctrine because defendant did not remain silent after being advised of her rights. The evidence, however, discloses that defendant was silent in the police car, and remained silent until she was questioned by Officer Leonard at the police station approximately two hours later, where she stated that decedent had threatened her with a belt. Consequently, the *Doyle* violation focuses on the questions and comments about her silence after the *Miranda* warnings and before her exculpatory remarks to Officer Leonard, a period of approximately two hours.

In *Doyle*, the Supreme Court determined that a defendant was denied due process when a State prosecutor sought to impeach the defendant's exculpatory testimony, told for the first time at trial, by cross-examining him about his failure to give the statement at the time of his arrest after receiving *Miranda* warnings. The court held that *Miranda* gives implicit assurance that silence will not be used against the defendant and that post-arrest silence is insolubly ambiguous. Moreover, our supreme court has held that the *Doyle* rule is applicable even where there is no evidence that defendant was previously given *Miranda* warnings. *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.

The *Doyle* court, however, did specify an exception to the strict prohibition on silence:

> "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest. Cf. *United States v. Fairchild*, 505 F2d 1378, 1383 (CA5 1975)." 426 U.S. 610, 619-20 n.11, 49 L. Ed. 2d 91, 98 n.11, 96 S. Ct. 2240, 2245 n.11.

The case before us, however, does not fall within that exception because the purpose of the prosecutor's questions and remarks here was to impeach defendant's exculpatory statement by pointing out that she did not tell police about decedent's physical abuse until she was at the police station, approximately two hours after arrest. In *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39, the court held that it was proper for the State to point out the inconsistencies between defendant's prior statements to the police and his testimony at trial. (See also *United States v. Mireles* (5th Cir. 1978), 570 F.2d 1287.) *Rehbein*, however, does not control this case since here it was improper for the State to question

Officer Boska about defendant's total silence after he read her the *Miranda* warnings. Similarly, it was a *Doyle* violation for the State to question defendant on cross-examination as to whether she had told the police in the car that she had been beaten. We therefore conclude that the testimony and comments on defendant's post-arrest silence constituted error, not harmless beyond a reasonable doubt. Repeated references by the State to defendant's failure to mention for approximately two hours that she had been beaten could have caused the jury to doubt the truth of her defense, even though a verdict of manslaughter was returned.

Accordingly, we hold that the cumulative effect of the prejudicial errors previously mentioned denied defendant a fair trial and provided compelling reasons for defendant's conviction to be reversed and remanded for a new trial.

Although we reverse and remand this case on the basis of the above trial errors, we also have carefully considered defendant's sufficiency of the evidence contention. From the evidence presented, we are unable to say that the jury improperly found her guilty of voluntary manslaughter beyond a reasonable doubt.

Reversed and remanded.

SULLIVAN, P. J., and LORENZ, J., concur.