THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AARON BAKER, Defendant-Appellant.

(No. 74-67;

Second District (1st Division)—August 8, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant, Aaron Baker, was convicted of aggravated battery in a jury trial in the circuit court of Kane County and sentenced to the Kane County Work Release Program for "an interval of 4-8 months" and placed on 2 years' probation. On appeal the defendant contends: (1) the State failed to produce clear and convincing evidence to prove beyond a reasonable doubt that the defendant's use of force in defense of himself and another was unreasonable, and (2) the conduct of the trial court was prejudicial against the defendant.

We find the defendant's first contention has merit and reverse on that ground.

The record discloses that on September 21, 1972, Raymond Hilleshiem and Gary Diehs were coworkers at Kinney Electric in Elgin. At 4:30 p.m. they left work together in Hilleshiem's car and stopped off at a bar on their way home for a couple of beers. They picked up Mrs. Hilleshiem at work and went to Hilleshiem's home for dinner and to split a six-pack of beer. After dinner they listened to music and drank more beer. At 11 p.m. the two men drove to Smitty's Tap in South Elgin to pay a bill and drink a few beers. At 11:35 p.m. they left Smitty's Tap intending to take Diehs to his apartment. They did not take a direct route to Diehs' apartment.

At the interesection of Villa Street and Prairie Street in Elgin, an automobile, driven by Mrs. June Kraft, executed a left turn from Prairie Street onto Villa Street in front of Hilleshiem's automobile. In order to avoid the collision Hilleshiem was forced to slam on the brakes and

swerve his automobile to the right, over the curb. Both Hilleshiem and Diehs became very upset and followed the Kraft automobile.

The testimony from this point on is contradictory. The gist of Hilleshiem's and Diehs' testimony is that they began following the Kraft automobile to find out why it ran them off the road. As they followed Diehs was yelling profanities out of the window at the Kraft automobile. They followed the Kraft automobile down a four-lane street, through several brightly lighted intersections and stopped twice for red lights. Finally, the two men pulled up behind the Kraft automobile, parked on a dark, deserted street. Hilleshiem exited his automobile and charged up on the driver's side of the Kraft automobile. He demanded to know why they ran them off the road. A scuffle ensued and blows were exchanged. Hilleshiem, 6'2" tall weighing 205 pounds, testified that June Kraft, an average-sized woman, attacked him.

Diehs testified that he exited the automobile and rushed to assist Hilleshiem. At the same time the defendant got out of Mrs. Kraft's automobile. As Diehs rushed towards the Kraft automobile he spotted the defendant. At this time Hilleshiem saw the defendant had a gun in his hand and shouted, "Watch out, the guy has a gun." The defendant then fired a shot into the air and yelled, "Stay where you are or I'll shoot." Diehs was about 10 feet away from the defendant. An argument followed between Diehs and the defendant. Diehs called the defendant "a bastard or a son-of-a-bitch, or something like that." The argument ended when the 6'3", 260-pound Diehs took a step towards the 6', 170-pound defendant and was shot. The police arrived within minutes and then, while still upset, Diehs hit the defendant in the mouth.

The defendant's version is quite different. He testified Mrs. Kraft was driving him home. He further testified he was aware that an automobile was following them on Villa Street because it was flashing its lights. While stopped at a red light on the corner of Chicago Street and Villa Street, that automobile bumped into the backend of the Kraft automobile. Both Mrs. Kraft and the defendant were afraid it was Mrs. Kraft's ex-husband, who had harassed her in the past. Mrs. Kraft continued to drive directly to the defendant's home. While stopped at another red light on the corner of Villa Street and Highland Avenue, Hilleshiem's automobile pulled up along the right side of Mrs. Kraft's automobile. Someone in the Hilleshiem automobile yelled, "Pull this m----- f----- over, you son-of-a-bitch. We are going to stomp you." Neither the defendant, nor Mrs. Kraft recognized either of the men. Mrs. Kraft continued to drive directly to the defendant's home. While stopped at another red light at Spring Street, Hilleshiem's automobile again bumped into the backend of Mrs. Kraft's automobile.

The defendant testified that both automobiles arrived at the defendant's home at the same time. Before the defendant and Mrs. Kraft had an opportunity to seek refuge in his home, Hilleshiem had exited his automobile, yelled, "Get the hell out of that car," and dragged Mrs. Kraft from the automobile. Hilleshiem then hit her, knocking her to the ground and kicked her. The defendant left the Kraft automobile under his own power, intending to help Mrs. Kraft. He was met immediately outside the car door by Diehs who started choking the defendant with both hands. Mrs. Kraft got off the ground, ran away from Hilleshiem towards the defendant, to help him. With her assistance, the defendant broke away from Diehs, jumped back a couple of steps and drew a pistol from his coat. Mrs. Kraft was knocked down by Diehs and was lying between the defendant and Diehs. The defendant fired a warning shot into the air and shouted, "Get the hell out of here and leave us alone." An argument ensued between Diehs and the defendant. Hilleshiem was walking towards the defendant. Diehs yelled, from about 5 feet away, "I'm going to kill you, you bastard." The defendant pleaded, "Stop, please stop," but Diehs moved towards the defendant and defendant shot him. The police arrived almost immediately.

In response to defendant's first contention, the law is well settled in Illinois. As early as *People v. Willson* (1948), 401 Ill. 68, 73, 81 N.E.2d 485, 488, the court stated:

> "* * * it is well settled that this court may review all of the evidence to determine whether it shows the guilt of the defendant beyond a reasonable doubt, and where the record leaves this court with a grave and substantial doubt of the guilt of the defendant we will reverse the judgment."

The defendant was charged with aggravated battery which is defined by section 12—4 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, § 12—4) as follows:

> "(a) A person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery."

Battery is defined by section 12—3 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, § 12—3) as follows:

> "(a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual * * *." (Emphasis added.)

■■ The defendant has raised the affirmative defense of defense of a person, (Ill. Rev. Stat. 1973, ch. 38, § 7—1.) Once the defense is raised, the State has the burden of proving the defendant's guilt beyond a rea-

sonable doubt as to the issues, together with all of the other elements of the offense. Ill. Rev. Stat. 1973, ch. 38, § 3—2.

■■ The defense of a person was thoroughly discussed in *People v. Williams* (1965), 56 Ill.App.2d 159, 165-68, 205 N.E.2d 749, 752—54, wherein the court stated the elements of the defense as follows:

"These elements are: (1) that force is threatened against the person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; (5) that the person threatened must actually believe: (a) that a danger exists, (b) that the use of force is necessary to avert the danger, (c) that the kind and amount of force which he uses is necessary; and (6) that the above beliefs are reasonable. There is a further principle involved, when, as in the instant case, the defendant uses deadly force. This principle limits the use of deadly force to those situations in which (a) the threatened force will cause death or great bodily harm or (b) the force threatened is a forcible felony." (56 Ill.App.2d 159, 165—66.)

The court went on to say:

"* * * it is settled law that * * * where he [defendant] pleads self-defense, it is sufficient to acquit him, if his evidence on self-defense, together with all the other evidence in the case, creates a reasonable doubt of his guilt." 56 Ill.App.2d 159, 165.

■■ In the case at hand, we do not believe the State has met the burden of proving beyond a reasonable doubt that the defendant's use of force was not justified. The law in Illinois recognizes that a physical beating may qualify as such conduct that could cause great bodily harm. (*People v. Dowdy* (1974), 21 Ill.App.3d 821, 825, 316 N.E.2d 33, 36.) The record shows that Hilleshiem and Diehs had been drinking heavily; that they were both larger than the defendant and Mrs. Kraft; that Hilleshiem knew that Diehs became violent when he was drinking and that he had had to restrain him on several other occasions; and that the two men were upset about being forced off the road and commenced chasing the Kraft automobile, yelling profanities. Furthermore, Mr. Diehs admitted hitting the defendant after the police arrived, although the police testified that it did not occur then. Under those circumstances and, since it occurred in a dark, foggy, deserted area at night, we conclude that Hilleshiem and Diehs instigated the imminent threat of great bodily harm to Mrs. Kraft and the defendant. The force was without any justification and totally unlawful. The defendant was reasonable in believing that the danger existed and that deadly force was necessary to avert the danger. He was under no obligation to retreat. (*People v. Wil-*

56

*liams* (1974), 57 Ill.2d 239, 311 N.E.2d 681.) Therefore, the defendant was justified in the use of deadly force for the protection of Mrs. Kraft and himself. As the supreme court stated in *People v. Dougard* (1959), 16 Ill.2d 603, 607—08, 158 N.E.2d 596, 598:

> "We have consistently held in many cases over a long period of years that in criminal cases it is the duty of this court to review the evidence, and, if there is not sufficient credible evidence, or if it is improbable or unsatisfactory, or not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed. It is the duty of this court to resolve all facts and circumstances in evidence on the theory of innocence rather than guilt if that reasonably may be done, and where the entire record leaves us, as this one does, with grave and substantial doubt of the guilt of the defendant, we will not hesitate to reverse the judgment. *People v. Sheppard*, 402 Ill. 347."

We find, from a careful examination of the record, that this court has a grave and substantial doubt as to the guilt of the defendant. The conviction of the defendant is therefore reversed.

In view of our ruling herein it is not necessary to consider the second contention of the defendant.

Reversed.

SEIDENFELD, P. J., and HALLETT, J., concur.