THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TIMOTHY WICKENHAUSER, Defendant-Appellant.

Fifth District   No. 78-218

Opinion filed August 7, 1979.—Rehearing denied September 12, 1979.

146

Irving M. Wiseman, of Wiseman, Shaikewitz, McGivern and Wahl, of Alton, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

This is an appeal by the defendant, Timothy Wickenhauser, from a judgment of conviction of aggravated battery entered February 28, 1978, after a jury trial in the Circuit Court of Madison County. Defendant raises the following issues: (1) whether the evidence was sufficient to support the verdict of guilty; (2) whether the trial court erred in allowing the State

to use, for impeachment purposes, a statement obtained from the defendant by police shortly after his arrest; (3) whether Rule 415(a) of the Illinois Supreme Court Rules was violated by the State in that one of the State's witnesses was advised by the police not to talk to anyone before trial; (4) whether the trial court erred in granting the State's motion in limine preventing defense counsel from questioning a State's witness regarding a statement made by the defendant shortly after the shooting incident; and (5) whether the trial court erred in denying the defendant probation. We conclude that the judgment of the trial court should be affirmed.

The facts of the case are as follows: Upon leaving Roe's Tavern at approximately 11 p.m. on August 11, 1977, the defendant discovered that his friend, Steve Williams, was engaged in an altercation with the victim, Jack Leamon, outside the tavern. The defendant attempted to intercede, but was told by Leamon that the quarrel was "none of his business." The defendant then obtained a revolver from his car, pointed it at Leamon, and again requested that Leamon leave Williams alone. Leamon then turned his attention from Williams to the defendant and began shoving the defendant backwards. The defendant testified that he then told Leamon that the gun was only a "bluff." However, Leamon continued to push the defendant backward and struck the defendant in the face. The defendant then shot Leamon, wounding him severely.

The defendant argued at trial that the gun went off by accident when he was struck by Leamon, or, in the alternative, that the shooting was justifiable. The four occurrence witnesses disagreed as to whether the defendant was falling back from Leamon's blow when the gun went off or whether the defendant regained his balance, aimed and fired. There was some evidence that the defendant suffered a broken nose from Leamon's blow.

We recognize that the use of a weapon may be a justifiable response to a physical attack. *People v. Reeves* (1977), 47 Ill. App. 3d 406, 362 N.E.2d 9; *People v. Baker* (1975), 31 Ill. App. 3d 51, 334 N.E.2d 249; *People v. Schwartz* (1973), 11 Ill. App. 3d 959, 297 N.E.2d 671, cited by defendant, each construe the provisions of section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 7—1) governing the use of force in defense of oneself or another; and in each of these cases, the force used was held to be justifiable. These cases are clearly distinguishable from the case at bar in that the victim in each was the aggressor and the force used against the defendant was substantially greater than that to which the defendant was subjected in the instant case. In *Baker*, the defendant was attacked by two assailants, both of whom were far superior in physical strength to the defendant. In *Schwartz*, the defendant suffered fractured teeth, multiple scratches and contusions, and was

severely injured before retaliating against the victim aggressor with a weapon. Similarly, in *Reeves*, the defendant was attacked and repeatedly struck by her husband, who had beaten her severely on several prior occasions, before responding with deadly force.

■■ Thus, the defendant's reliance on these cases is misplaced. Here, the defendant was the aggressor since he accosted Leamon with the revolver before the use of armed force was necessary to prevent imminent death or great bodily harm to Williams. In addition, the evidence adduced by the defendant that he had "withdrawn from the fracus," so as to lose the status of the first aggressor, was rejected by the jury. In any event, it is impossible to conclude as a matter of law that the defendant's use of a .45-caliber revolver was a justifiable response to the degree of physical force used by Leamon against Williams or defendant.

■■ The defendant also contends that the State should not have been permitted to impeach his testimony with a statement obtained by the police while he was in custody shortly after the arrest. We conclude that this use of the statement was proper under *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643.

Upon arrest, the defendant was provided with *Miranda* warnings, and he then requested to consult with an attorney. The attorney arrived at police headquarters at approximately 12:30 a.m., advised the defendant to remain silent and then left the station house. At approximately 1:40 a.m. an officer, unaware that defendant had invoked his *Miranda* rights to counsel and had chosen to cease interrogation, began to question the defendant. The defendant responded to one of the officer's questions and then refused to answer any others. The statement taken by the officer was suppressed in the State's case in chief since the defendant did not waive his *Miranda* rights.

In *Harris*, the court held that a statement inadmissible against the accused in the prosecution's case in chief by reason of *Miranda* may be used for the limited purpose of impeachment. It is not a significant distinction from *Harris* that in the instant case the defendant's statement came after he invoked his right to counsel and his right to remain silent as opposed to his *Miranda* right to be given warnings. In *Harris* the court stated there is hardly justification for letting a defendant affirmatively resort to perjurious testimony in reliance on the prosecution's disability to challenge his credibility because of the exclusionary rule. The court went on to say:

> "* * * The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." (401 U.S. 222, 226, 28 L. Ed. 2d 1, 5, 91 S. Ct. 643, 646.)

Therefore, the trial court did not err in allowing the State to impeach the

defendant with the statement in question. See *People v. Sturgis* (1974), 58 Ill. 2d 211, 317 N.E.2d 545.

The defendant also argues that the prosecution violated Supreme Court Rule 415(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 415(a)) because one of the State's witnesses was advised by the police not to talk with anyone concerning the case prior to trial. Rule 415(a) prevents counsel or their "personnel" from advising witnesses to refrain from discussing the case with opposing counsel. The defendant's argument assumes that the police, who were acting of their own accord in this case, are "personnel" of the prosecutor. However, it is unnecessary to pass on this question since the defendant failed to request the application of one of the available sanctions for this alleged violation in the trial court.

■■ Rule 415(g) of the Illinois Supreme Court Rules (Ill. Rev. Stat. 1977, ch. 110A, par. 415(g)) enumerates the sanctions which may be imposed for violations of the discovery process. Among the possible alternatives is an order for compliance, the grant of a continuance, or the exclusion of such evidence. It is evident that the application of any of these sanctions in the instant case would have obviated any harm to the defense that may have flowed from the inability to interview the witness before trial. By failing to give the court an opportunity to redress the alleged prejudice at the trial level, the defendant cannot now be heard to complain of a violation of Rule 415(a). *People v. Green* (1976), 42 Ill. App. 3d 978, 356 N.E.2d 947; *People v. Embry* (1973), 12 Ill. App. 3d 332, 297 N.E.2d 604.

The defendant's next argument is that the trial court erred in granting the State's motion in limine to prevent defense counsel from eliciting from a State's witness a statement made by the defendant shortly after his arrest. The statement, "he hit me first," was made by the defendant to a police officer while the latter was frisking the defendant at the scene of the crime. The defendant argues that the statement falls under the spontaneous utterance or the state-of-mind exception to the hearsay rule, and therefore should have been admissible.

■■ It is unnecessary to determine whether the statement was admissible pursuant to an exception to the hearsay rule for the reason that defendant was prevented from eliciting the statement only on cross-examination, the court having indicated that defendant would be permitted to recall the officer as part of defendant's case in chief. Defendant declined to recall the officer. Therefore, he waived any objection to the court's order granting the motion in limine.

The defendant's final contention is that his sentencing was inappropriate. He argues that the trial court abused its discretion in denying probation and that the court failed to comply with the requirement of assigning its reasons for imposing the sentence of two years imprisonment.

It should be noted at the outset that the court's sentence of the defendant to imprisonment was for the minimum term specified by statute for the offense of aggravated battery. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—8—1(a)(6).) Further, there is a rebuttable presumption that the trial court's sentence is proper. (Ill. Rev. Stat. 1977 Supp., par. 1005—5—4.1.) This court has made an extensive review of this legislation in *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, in which it was held that once an affirmative showing has been made that the sentence of the trial court is erroneous, then the appellate court is authorized to reduce it.

In the instant case, since the imprisonment imposed was the minimum sentence to imprisonment possible for the offense of which defendant was found guilty, the only reduction this court may make to defendant's sentence is to direct a sentence to probation or conditional discharge. The Unified Code of Corrections, section 5—6—1, enumerates those factors which are to guide the trial court in the determination of whether to grant probation or conditional discharge:

> "(a) Except where specifically prohibited by other provisions of this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that: (1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or (2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—6—1(a).

There is ample support in the record for the trial judge's decision that probation or conditional discharge in the instant case would deprecate the seriousness of the offense and be inconsistent with the ends of justice. The crime was one of violence, perpetrated with a large caliber revolver, and the victim was severely and probably permanently injured. The trial judge also referred to the need for deterring such violence in the future.

We are aware of the fact that the defendant is a first offender and that several respectable members of the community testified in his behalf at the sentencing hearing; however, as stated in *People v. Waud* (1977), 69 Ill. 2d 588, 595-96, 373 N.E.2d 1, 4, "[t]he facts that a defendant has led a good life prior to his or her shortcomings and is not likely to repeat his or her failures again are factors to be considered by the trial court, but they are not conclusive factors."

Finally the trial judge complied with the requirement of section 5—4—1(c) of the Unified Code of Corrections that he "specify on the record

the particular evidence, information, factors or other reasons that led to his sentencing determination." (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—4—1(c).) The trial court stated that its decision was based upon the serious implications of the crime and the need to deter such conduct in the future. The trial judge also made it clear that the decision was based in part upon the presentence report which recommended that probation be denied because the seriousness of the offense would be deprecated by a sentence of probation and because of the severity of the injury suffered by the victim. Thus, the record of the sentencing hearing reflects adequate compliance with the mandate of section 5—4—1(c).

The State contends that this court should increase to five years the sentence imposed by the trial court because the defendant was convicted of shooting the victim "through and through" at close range with a large caliber revolver and because the victim will probably never fully recover. This court is authorized to modify a sentence given by the trial judge by entering any sentence that the trial judge could have entered, including increasing or decreasing the sentence. (Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—5—4.1.) However, it necessarily follows that the prosecution should be held to the same proof required of the defendant in *Choate*.

It is our opinion that both defendant and the State have failed to show that the sentence imposed by the trial court is erroneous in this cause as required by *Choate*; therefore, they have failed to rebut the presumption established by section 5—5—4.1 of the Unified Code of Corrections, and the sentence must be affirmed.

For the foregoing reasons, the judgment of the Circuit Court of Madison County is hereby affirmed.

Affirmed.

JONES and KUNCE, JJ., concur.