THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD ALLAN SHERMAN, Defendant-Appellant.

Third District   No. 79-827

Opinion filed August 28, 1980.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce Black, State's Attorney, of Pekin (John X. Breslin and Rita Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant, Gerald A. Sherman, was convicted by a jury in the Circuit Court of Tazewell County of robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—1(a)) and theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)). He was subsequently sentenced to the Department of Corrections to serve two concurrent terms of 5 years, and in addition forfeited a $2,500 bail bond as restitution. The defendant now appeals from his conviction.

The record reveals that at approximately 10:30 a.m. on August 17, 1978, Mrs. Evelyn Blankenship, a co-owner of Pete and Mary's Tavern in East Peoria, was entering the tavern by the back door after having obtained $10,000 in cash from the East Peoria First National Bank. She was carrying the $10,000 in a locked money bag which she held in her hand. Suddenly, a man later identified as Scott Koch came around the side of the building, shoved Mrs. Blankenship into a nearby garage while grabbing the money bag, and ran off through a parking lot. Mrs. Blankenship gave chase, but Koch escaped.

Koch, who testified for the State, implicated the defendant in the robbery. Koch testified that five days before the robbery he was approached by the defendant and Steve Kennedy, who told him "they had a job they wanted to do * * * [but] they couldn't do it themselves because Mrs. Blankenship knew them both too well and they needed somebody that she didn't know." This first discussion took place in Kennedy's Ranchero. A number of subsequent conversations between Koch, Sherman and Kennedy concerning the robbery took place at Sherman's apartment in Creve Coeur.

Koch testified that the night before the robbery the defendant cut a hole in a fence located near the embankment of the Cedar Street extension, a raised overpass with a pedestrian tunnel running underneath. The defendant cut the hole using bolt cutters he obtained from Jeff Anderson, an employee of Fogler's Variety Clearing House in Creve Coeur. The next morning, the defendant and Kennedy drove Koch to the tavern where the robbery was to occur. Koch stated that after taking the money bag from Mrs. Blankenship, he eventually ran through the pedestrian tunnel, through the hole in the fence the defendant had cut the night before, and up the embankment to the westbound lane of the Cedar Street extension. He was subsequently picked up by Kennedy and Sherman at a place marked with a stick, and the three men drove to Peoria. After staying at a tavern for 45 minutes to an hour, the three split up the money and went their separate ways. The money bag, a wig, and the clothes Koch was wearing were burned under a railroad trestle near the Peoria Speedway.

Koch's testimony was partially corroborated by Mark Cornelison, a teenager who lived near the tavern. Cornelison testified that a few days

before the robbery he saw Koch and two other men he was unable to identify "messing around with the fence" near the Cedar Street overpass. He also saw them placing sticks near the bridge. Cornelison identified Kennedy's brown Ranchero as the vehicle the three men used that day.

Koch's testimony was, however, contradicted not only by defense witnesses but by the State's witnesses as well. Contrary to Koch's statement that neither Sherman nor Kennedy wanted to rob Mrs. Blankenship because she knew them, Mrs. Blankenship testified that she had never seen the defendant before the robbery. In fact, asked if she had *ever* seen him, she responded, "Not that I can recall." Jeff Anderson testified that, contrary to Koch's story, he did not give any bolt cutters to the defendant, nor did the defendant ever ask him for the bolt cutters. The only one who asked him about bolt cutters was Koch. Anderson also testified that prior to taking the stand he was stopped in the hall of the courthouse by Koch and told to testify that he gave the bolt cutters to the defendant.

The defendant attacked Koch's credibility in a number of ways. Koch's assertion that he lacked familiarity with drugs was contradicted by the testimony of William Block and Lyle Block. They testified that Koch had told them he had been involved in drug transactions in California and Florida. Lyle Block also testified that on one occasion he caught Koch trying to steal tranquilizers that had been prescribed for one of Block's dogs. In addition, both of the Blocks testified that Koch's reputation in the community for truthfulness was bad. As evidence of Koch's animosity and hostility toward the defendant, Pam Richards testified that she heard Koch threaten to kill Sherman in April of 1979 while they were in a tavern shooting pool. The defendant also introduced evidence suggesting that Koch had made a deal with the State in exchange for his testimony against the defendant, but this directly conflicted with the testimony of a police officer and an assistant state's attorney who stated that no such deal had been made.

Several alibi witnesses testified on the defendant's behalf. Donald Gregory testified that at 8:30 a.m. the day of the robbery he drove Sherman to the home of Elaine Bryant, Sherman's girlfriend. Bryant then testified that Sherman was with her from 9 a.m. until 2 or 2:30 p.m. Her testimony was partially corroborated by Pamela Stewart, who stated she was at Ms. Bryant's home until 11:30 a.m. the day of the robbery and Sherman was there at that time. Finally, Sherman himself took the stand and denied any involvement in the crime.

■▌ The first contention of the defendant on appeal is that his convictions for robbery and theft must be reversed because they rest upon the essentially uncorroborated testimony of an accomplice, Scott Koch, whose credibility was severely impaired by the testimony of Jeff

Anderson. "Ordinarily the credibility of a witness' testimony is a matter to be determined by the trier of fact. Although the testimony of an accomplice * * * is competent and sufficient standing alone to support a conviction, it should be viewed with caution and suspicion." (*People v. Kiel* (1979), 75 Ill. App. 3d 1030, 1035, 394 N.E.2d 883, 887.) Even if we view Koch's testimony with circumspection, however, it is not so unreasonable, improbable, or unsatisfactory that a reasonable doubt of Sherman's guilt is raised. It is true that Anderson's testimony regarding the bolt cutters and his conversation with Koch in the hall of the courthouse was damaging to Koch's credibility. However, it is apparent that the jury simply did not believe Anderson, who himself was on a deferred prosecution program in Tazewell County. The jury also apparently rejected, or gave little weight to, the Blocks' testimony regarding Koch's familiarity with drugs and his bad reputation for truth and veracity in the community, Pam Richard's testimony regarding Koch's threat to Sherman, and the testimony of the defendant's alibi witnesses. In addition, the evidence of a deal between Koch and the State for Koch's testimony against Sherman was, at best, conflicting. We decline to substitute our judgment for that of the jury which heard the evidence and had the opportunity to observe the demeanor of the witnesses, something which we are unable to do with a cold record (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182; *People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331; *People v. Hobson* (1979), 77 Ill. App. 3d 22, 396 N.E.2d 53). We therefore reject the defendant's first contention on appeal.

■■ The second issue raised by the defendant in the case at bar is whether the evidence concerning the manner in which the money bag was taken from Mrs. Blankenship was sufficient to support the robbery conviction. The Illinois robbery statute provides that "[a] person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1977, ch. 38, par. 18—1(a).) In *People v. Patton* (1978), 60 Ill. App. 3d 456, 376 N.E.2d 1099, *aff'd* (1979), 76 Ill. 2d 45, 389 N.E.2d 1174, this court held that a simple purse snatching from the victim's fingertips did not constitute a robbery because there was no evidence of "force or intimidation at overcoming the will of the victim and certainly no resistance on the victim's part." (60 Ill. App. 3d 456, 459, 376 N.E.2d 1099, 1101.) There is no direct evidence in this case that Mrs. Blankenship actively resisted the taking of the money bag from her possession. Koch himself testified that he simply grabbed the money bag from the victim and ran. However, Mrs. Blankenship testified that as Koch grabbed the money bag he shoved her into a garage. It is a logical and reasonable inference from this testimony that in taking the money bag Koch used a certain amount of force to overcome Mrs. Blankenship's resistance. This

circumstantial evidence of resistance and direct evidence of the use of force distinguishes *Patton* and *People v. Gray* (1980), 80 Ill. App. 3d 213, 400 N.E.2d 473, and is sufficient evidence to support the defendant's robbery conviction.

■■ The third issue raised by the defendant concerns the propriety of the defendant's convictions for both robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—1(a)) and theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)). He contends that because both offenses arose out of the same physical act, *i.e.*, Koch's taking of the money bag from Mrs. Blankenship, multiple convictions are improper and the theft conviction must be vacated. (See *People v. Malaszenko* (1979), 76 Ill. App. 3d 1, 393 N.E.2d 1350.) We agree. In *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844, the Illinois Supreme Court found that "[p]rejudice results to the defendant only in those instances where more than one offense is carved from the same physical act." This is precisely the situation in the case at bar. Both of the defendant's offenses arose out of the same physical act of defendant's accomplice. Consequently, we vacate the defendant's theft conviction which, as a Class 3 felony, is the less serious offense (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(e)(3)).

■■ The defendant next contends that the trial court failed to adequately specify for the record his reasons for his sentencing determination, and as a consequence this case should be remanded for a new sentencing hearing. In sentencing the defendant, the trial court made the following statements:

> "THE COURT: The Court agrees with the State's Attorney in this case that you are not eligible for Probation. You would not be a good risk, and considering the seriousness of the crime and how it was perpetrated, you should be and are going to be sentenced to the penitentiary. On Count I of Robbery, which is a Class 2 Felony, it carries with it a sentence of 3 to 7 years, you are hearby Sentenced to 5 years in the penitentiary. On Count II for Theft, which is a Class 3 Felony, it carries with it a sentence of 2 to 5 years, you are also Sentenced to 5 years. These sentences are to run concurrently, and they are to commence immediately, and also any bond money that you might have posted will be forfeited to the County for restitution to the—has it been assigned to you, Mr. Jones?

> MR. JONES: No, sir. It's his father's money.

> THE COURT: Will be forfeited to Tazewell County as restitution to the victim in this case."

Section 5—4—1 of the Unified Code of Corrections provides in part that "[i]n imposing a sentence for a felony, the trial judge shall specify on the record the particular evidence, information, factors or other reasons

that led to his sentencing determination." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c).) In alleging that the trial court's statements at the sentencing hearing fall short of the requirement of section 5—4—1, the defendant principally relies on *People v. Rickman* (1979), 73 Ill. App. 3d 755, 391 N.E.2d 1114. In *Rickman*, this court held that the defendant was denied his statutory right to a proper sentencing hearing because the trial court failed to adequately specify for the record his reasons for the sentencing determination. The *Rickman* opinion, however, does not disclose what, if anything, the trial court stated at the sentencing hearing on this particular point. Although *Rickman* does not, therefore, offer a profitable comparison, the case of *People v. Wickenhauser* (1979), 75 Ill. App. 3d 145, 393 N.E.2d 1185 does, and is helpful in resolving this issue. In *Wickenhauser*, as in the instant case, the defendant alleged that the trial court failed to satisfy the requirements of section 5—4—1(c) of the Unified Corrections Code. The court, in finding the requirements were met, made the following observations:

> "The trial court stated that its decision was based upon the serious implications of the crime and the need to deter such conduct in the future. The trial judge also made it clear that the decision was based in part upon the presentence report which recommended that probation be denied because the seriousness of the offense would be deprecated by a sentence of probation and because of the severity of the injury suffered by the victim. Thus, the record of the sentencing hearing reflects adequate compliance with the mandate of section 5—4—1(c)." (75 Ill. App. 3d 145, 151, 393 N.E.2d 1185, 1190.)

We find little difference in substance between the statements of the trial court in *Wickenhauser* and those of the court in the instant case. In both cases the court noted the seriousness of the crime. Further, in both cases the court gave its reasons for denying probation (in *Wickenhauser*, the court relied upon the presentence report; in this case, upon the argument and recommendation of the State's Attorney). Although we would prefer trial courts to be somewhat more detailed in the future with regard to the reasons for a particular sentencing determination, we find the statements of the trial court here to be adequate, and therefore the requirements of section 5—4—1(c) to be satisfied.

■■ Finally, the defendant contends that restitution cannot be ordered with a sentence of imprisonment. Under section 5—5—3(b) of the Unified Code of Corrections, however, which was in effect at the time the defendant was sentenced, such an imposition is allowable. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3(b); *People v. Brunkhorst* (1980), 80 Ill. App. 3d 815, 400 N.E.2d 472.) Consequently, the defendant's contention is without merit.

For the reasons we have discussed, we affirm the defendant's conviction for robbery, but vacate his conviction for theft.

Judgment affirmed in part and vacated in part.

STENGEL and SCOTT, JJ., concur.