643 P.2d 1067

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Daniel GREENE, Defendant-Respondent.**

**No. 13591.**

Supreme Court of Idaho.

April 7, 1982.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Guy G. Hurlbutt, Sp. Deputy Atty. Gen., Boise, for plaintiff-appellant.

Anton Hohler, of Tway & Tway, Boise, for defendant-respondent.

BAKES, Chief Justice.

The defendant respondent Greene was convicted in November, 1976, on two counts of illegal possession of drugs and was sentenced not to exceed five years on Count I, and not to exceed three years on Count II, the court retaining jurisdiction for 120 days. The court assessed costs and imposed fines of $2,500 on each count in the event that defendant received probation at the end of

898

the 120 day period. That conviction was affirmed on appeal. *State v. Greene*, 100 Idaho 464, 600 P.2d 140 (1979). Subsequent to the decision on appeal, Greene made a motion for reduction of sentence pursuant to I.C.R. 35. The trial court obtained an updated presentence investigation report, and after a hearing entered an order dated December 5, 1979, suspending the execution of the prison term, placed the defendant on probation for five years, and as a condition of probation imposed a fine of $2,500 on each count, to be paid within six months. The state appeals the trial court's order dated December 5, 1979, suspending the sentence, arguing that that action is too lenient. We affirm.

■ As to this Court's jurisdiction to hear such an appeal, Art. 5, § 9, of the Idaho Constitution provides that "the Supreme Court shall have jurisdiction to review, upon appeal, any decision of the district courts, or the judges thereof ...." By that provision we have jurisdiction. *State v. Lewis*, 96 Idaho 743, 536 P.2d 738 (1975); *State v. Berlin*, 95 Idaho 225, 506 P.2d 122 (1973). The order of the trial court dated December 5, 1979, suspending the execution of sentence and placing the defendant on probation is appealable by the state as a matter of right under I.A.R. 11(c)(6) and I.C. § 19–2801, rather than as a matter of discretion, as in *State v. Lewis, supra,* and *State v. Berlin, supra.* The appeal is properly before us.

■ Going to the merits of the state's argument on appeal, it is asserted by the state that the trial court abused its discretion in entering its order dated December 5, 1979, in which it suspended the execution of the prison sentence and placed the defendant on a five year probation imposing a fine of $5,000. Recognizing this Court's broad

jurisdictional authority to hear appeals from "any decision of the district courts," defendant respondent Greene nevertheless argues that to set aside the district court's order of December 5, 1979, would be to reimpose the five and three year sentences imposed by the original judgment. Defendant asserts that this would constitute an enhancement of a sentence on appeal which the defendant claims this Court has no authority to do.[1] Even assuming that we have authority to review and enhance a defendant's sentence on appeal, we have reviewed the record before the trial court, and applying the same standard of review in this case that we would apply in reviewing a criminal sentence on appeal by a defendant, *State v. Birrueta*, 101 Idaho 915, 623 P.2d 1292 (1981); *State v. Cotton*, 100 Idaho 573, 602 P.2d 71 (1979); *State v. Seifart*, 100 Idaho 321, 597 P.2d 44 (1979), we conclude that the trial court would not have abused its discretion in entering its order dated December 5, 1979.

DONALDSON and SHEPARD, JJ., concur.

McFADDEN, J., concurs in result.

BISTLINE, Justice, concurring specially.

Entertaining a somewhat different view, I believe the questions presented on appeal are of sufficient importance to justify a separate opinion. The State alleges that the trial court abused its discretion "by imposing a sentence which was too lenient in view of the charges and circumstances of the case." Some of the State's brief develops the philosophy underlying that contention rather exhaustively, and to my mind, most commendably, with which I shall deal in Part A. The State's other main contention is that the trial court, following this Court's affirmance of Greene's conviction

1. The United States Supreme Court recently determined that enhancement of a criminal sentence on appeal does not violate the double jeopardy clause of the United States Constitution, Amend. 5. *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). Several state courts, encountering no double jeopardy bar, have recognized their authority to increase sentences on appeal. *See,*

*e.g., People v. Wickenhauser*, 75 Ill.App.3d 145, 30 Ill.Dec. 838, 393 N.E.2d 1185 (1979); *State v. Henrich*, 162 Mont. 114, 509 P.2d 288 (1973). Since we are not modifying or increasing this defendant's sentence, we are not required to, nor do we reach the issue of whether such modification would offend the double jeopardy clause of the Idaho Constitution. *See* Idaho Const. Art. I, § 13.

and upon the remittitur being sent down, erred in granting Greene probation pursuant to a motion for reduction of sentence, which I deal with in Part B.

## A.

As pointed out by the State in its brief, "[t]he sentence imposed was not raised as an issue by either party on [the first] appeal and was not considered by [this] Court." This is true. Equally true is the highly singular fact that the defendant has not either by motion or argument challenged the right of the State to now attack the leniency of the sentence when it did not do so on the first appeal, which was taken by Greene. Had the defendant made an objection, perhaps one in the nature of res judicata,[1] or raised the question of jurisdiction, I would think that the leniency of the sentence would most likely have been held to be an issue which had to have been raised on the first appeal from the final judgment of conviction and imposition of sentence—or not at all.[2] In any event, the State has mischaracterized the action of the district court. The court did *not* reduce Greene's sentence, but simply placed him on probation—a possibility clearly contemplated by the original sentence, which included 120 days at Cottonwood. The defendant contributes to the confusion caused by this mischaracterization by arguing that to reverse the district court would result in imposing a greater sentence, and that this would be beyond the power of this Court. Both parties are incorrect. The State asks only that we reverse the order granting probation; the defendant asks that we affirm it. Thus viewed, this appeal does not involve sentence enhancement at all.

The issue of sentence enhancement having been raised and briefed, however, and then responded to in defendant's brief, and

there being no objection, it is important enough to be deserving of some discussion. If nothing else, the State presents an excellent rationale for the guidance of sentence review on appeal:

"Whether or not a sentence may be increased on appeal depends in part on the rationale behind sentence review at the appellate level. There appear to be two fundamental arguments for sentence modification on appeal: (1) The sentence does not meet the crime or the circumstances of the case; and (2) Society is best served by an even-handed administration of punishment throughout the State, requiring the appellate court to work toward sentence uniformity for cases involving similar crimes and circumstances.

At that point the State notes, and correctly so, that this Court has not yet embarked on an attempt to create uniformity in sentences through appellate overview, noting as "some authority to the contrary," those cases compared in the dissenting opinion in *State v. Adams*, 99 Idaho 75, 577 P.2d 1123 (1978). The dissent in *Adams* was quoted for the proposition therein advanced that "[t]he undesirable disparity of sentences, so much decried by all commentators, can be alleviated if the Court looks to the seriousness between different categories of crimes as well as to the aggravating or mitigating circumstances present within a single category of crime," 99 Idaho at 79, 577 P.2d at 1127, and the fact that disparities create "'demoralizing and anti-rehabilitative effects on prisoners who receive harsher sentences than others in comparable situations.'" 99 Idaho at 82, 577 P.2d at 1130 (quoting Dawson, Sentencing 216 (1969).

The State's position shows an inclination toward the views of the *Adams* dissent, but

---

1. *See Kraft v. State*, 100 Idaho 671, 603 P.2d 1005 (1979), in connection with *Ramseyer v. Ramseyer*, 98 Idaho 554, 569 P.2d 358 (1977), and judicial policy against "piecemeal" appeals, 4 Am.Jur.2d, Appeal and Error § 49 at 571 (2d ed. 1972).

2. "In a criminal case, the time to file an appeal is enlarged by the length of time the district

court retains jurisdiction pursuant to § 19–2601(4), Idaho Code." I.A.R. 14(a). Query: Following his first appeal, could Greene have filed a second appeal challenging his sentence as excessive? If he could not do, can the State nevertheless challenge it as being too lenient where the State did not challenge it in the first appeal?

the State perceives at the same time that the effectiveness and workability of that rationale "depend on the ability of this Court to *increase* as well as to *decrease* sentences when the circumstances require." (Emphasis in original.)

The State contends that "[t]his Court clearly has the power to increase as well as to decrease sentences on appeal," citing article V, section 9 of the Idaho Constitution, Rule 11(c)(6) of the Idaho Appellate Rules, and *State v. Ramirez*, 34 Idaho 623, 203 P. 279 (1921). In the landmark *Ramirez* case the Supreme Court's power to modify sentences was exhaustively considered and upheld. Significantly, however, considerable reliance was there placed on the legislative grant of that power set forth in the criminal code:

"The [supreme] court may reverse, affirm or modify any order or judgment appealed from and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." C.S. § 6446; I.C. § 19–2821 (repealed 1977).

That provision harked all the way back to the first territorial legislature, and may be found in its original form in the 1864 Criminal Practice Act, § 487.[3] It acquired its "former" status in 1977 at the hands of a legislature all too responsive to the rule-making program which this Court embarked upon some 10 or 12 years ago. *See* 1977 Idaho Sess.Laws, ch. 170, § 9. The Court's Rule 11, however, does not purport to confer upon the Court such power over sentences as the legislature had continuously granted it over a span of 113 years, nor should it. In my opinion, the Court cannot lawfully assume such substantive power under the guise of procedural rulemaking, and this matter of authority to increase sentences, assuming its constitutionality, can

only be accomplished by legislative endeavor. It is not by any stretch a matter of mere procedure, and some bewilderment is caused by the State's insistence that the Court exercise a power which it does not have. Nevertheless the logic of the State's brief is well understood: The Court's power to modify sentences by reduction when found excessive should reciprocally include the power to modify by increasing sentences. The answer, so I think, is that the contention now urged by the State might have prevailed had it been made when I.C. § 19–2821 was still the law. Section 19–2821 was clearly a keystone to the *Ramirez* holdings and the State's contention cannot be supported by a statute repealed years ago. When it did state the law, the *Ramirez* court utilized it, and the Court has since continued to reduce sentences too long now for that power to be successfully assailed. Of course, the State does not do so. Rather, the State seems to claim that it should have appellate rights which are identical to those of criminal defendants, a proposition which I believe is improper to discuss. Such a proposition properly should be submitted to the legislature, as suggested in the *Adams* dissent. I do believe that upward modification of a sentence should ordinarily not be an issue on appeal unless the defendant by his appeal opens the subject.

The Court, by its I.C.R. 35, has presumed under its procedural rulemaking power to extend to district courts the right to reduce, without mention of increasing, sentences following an appeal.[4] The rule parallels a similar federal rule—*see* Fed.R.Crim.P. 35 —the important difference being that the federal rule emanates from a congressional enactment. *See State v. Knee*, 101 Idaho 484, 616 P.2d 263 (1980) (Bistline, J., dissenting). I.C.R. 35 serves a good purpose, but I would feel more constitutionally com-

---

**3.** Section 487 of the Criminal Practice Act provided: "The appellate court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial.

**4.** The *legislature* has conferred upon district courts the right to suspend imposed and par-

tially executed sentences when 120 day jurisdiction has been retained. I.C. § 19–2601(4). The statutory provision providing for retention of jurisdiction in the district during the 120 day period, to my mind, gives the district court the power to reduce the sentence it has imposed, or to commute it, as under § 9–2601(1).

fortable if the substance of it came from the legislature. For the same reason I believe that, even assuming the Court was inclined to enter the field of increasing sentences, the principle for which the State contends today would better be the doing of the legislature, acting with considerably more input than that which often guides the Court.

It here appears, however, that following remittitur, at which time the defendant moved for a reduction of sentence, the State did not avail itself of that opportunity to ask for an increase of sentence.[5] The failure to raise that issue in the court below effectively precludes the State from raising it here for the first time. Further, although the State *did* resist Greene's motion for reduction of sentence, it was successful in that endeavor—thereby presenting no issue for appellate review. On that basis, and not on constitutional or statutory grounds, or the Court's rules of procedure, I would dismiss the State's challenge to the leniency of the sentence.

### · B.

Acting under the Court's Criminal Rule 35, however, the trial court, though leaving stand its previous sentence, suspended execution of that sentence and placed Greene on probation. The State challenges that order, and its right to appeal *that order* seems to clearly fall under the provisions of I.A.R. 11(c)(6). At oral argument we were advised that Greene's probation had been violated, and that a bench warrant had

been issued for his arrest. Although upon his apprehension he will be entitled to a hearing on his probation violation, the remarks of the trial court[6] at the reduction of sentence hearing make it eminently clear that Greene will now serve the sentence imposed. For those reasons I consider the issue of the trial court's granting probation as moot, and would simply dismiss the appeal.

---

**5.** At the hearing the deputy prosecuting attorney (not the author of the brief on appeal) prefacing the State's remarks with the statement that "all the State intended to ask in this case is that the Court carry through with the original sentence from February of 1976," did mention that Greene had received "really a lenient sentence under the circumstances," and stated that "his record more than justifies our suggestion that he be placed on the 120-day program." Very little more than that was said.

**6.** The trial court with care stated its reasons for placing Greene on probation:
"Well, I'll tell you the way I see it. This man knows his way around. He's been one side or the other of the law from—for a long, long time. This isn't a kind of person that's

just going to go out and carelessly get into trouble. He gets in trouble. If he gets in trouble, he knows what he's doing; he knows what the consequences are. This is not a case for what one might call probation in the usual sense of the word where a probation officer has to work with somebody in trying to go out and help him get a job, try to build up their ego, try to make them feel good about themselves. This is a man who it seems to me, knowing as much as he knows about the law, law enforcement, about what the price for violating the law is, has to be prepared to pay the price anytime he violates the law. I think that's probably the best way to think about rehabilitation in a case like this."