682 P.2d 95

The STATE of Idaho,
Plaintiff-Respondent,

v.

David GIESE, Defendant-Appellant.

No. 14568.

Supreme Court of Idaho.

May 17, 1984.

John Lynn, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

PER CURIAM.

Upon a guilty plea to first degree burglary, the appellant was sentenced to an indeterminate term not to exceed fifteen years imprisonment. Error is alleged in the length of sentence. Having reviewed the record, including appellant's presentence investigation report and prior criminal record, and after considering the briefs and arguments of counsel, we conclude the court made no error in its sentence. The order is *affirmed*.

BISTLINE, Justice, specially concurring.

In my view, this case is more deserving of attention than a terse ten-liner affirming the sentence. This I say for a number of reasons. The first of these reasons is that this case involves the senseless invasion of a private residence and a brutal attack upon a kindly elderly gentleman who compassionately would later say of the three

---

defendants that he thought one of them at least, not Giese, should be made to serve some prison time. A second reason for a more detailed treatment of the proceedings below is that counsel for appellant has provided us with a well-reasoned and authority-documented analysis of sentencing procedures and requirements. As a third reason, it is important in my view that this Court note for public consumption that the fault of the sentence imposed on Giese is not its length per se, but its being out of proportion to the sentences imposed on the other two culprits, one of whom received only a ten-year sentence, and the other receiving with his ten-year sentence a retained 120-day jurisdiction which, so we were informed at oral argument, led to his eventual release on probation.

Turning to the crime itself, the facts are readily available in the appellant's brief:

"An information was filed on April 17, 1981, charging the Appellant herein together with his two co-defendants, Blaine Jones and Kevin Minick, with the crimes of Burglary in the First Degree in Count I and Robbery in Count II. The charges basically alleged that the three defendants entered a private residence of Mr. Herman Hilficker of Boise, Idaho, in the night-time of March 5, 1981 with the intent to commit a crime of larceny and thereby did forceably take from the person of Mr. Hilficker a sum of money. Furthermore, the State claimed by its Information that the three defendants beat Mr. Hilficker with a candlestick during the course of the robbery and thereby inflicted serious injuries before fleeing the premises.

"Trial was originally set for all three defendants on September 21, 1981. However, because of a Substitution of Counsel on behalf of the Appellant, David Giese, the Court reset the trial for January 11, 1982. On January 12, 1982, the Appellant entered a plea of guilty to Count I charging him with the crime of Burglary in the First Degree. Pursuant to a plea bargain, the State subsequently dismissed Count II on January 23, 1982. Defendant Minick had plead guilty previously to Count I and the State in turn also dismissed Count II against him as well. The third Defendant, Blaine Jones, proceeded to trial on January 13, 1982 and was found guilty of both Counts—Burglary and Robbery.

"The Appellant was eventually sentenced on February 26, 1982, and received a fifteen-year indeterminate sentence with no credit for time served previous thereto. On that same date, the co-defendant, Blaine Jones, was sentenced to a ten-year indeterminate sentence for the crime of Burglary and a concurrent ten-year sentence for the crime of Robbery. Finally, the co-defendant, Kevin Minick, was sentenced on March 5, 1982, to an indeterminate ten-year sentence with the Court retaining jurisdiction for 120 days. Subsequently, co-defendant Minick successfully completed the 120 rider program and is now and has been on probation.

"At the time the Appellant was sentenced on the present offense he was serving a five-year indeterminate sentence for a Burglary offense as well as a concurrent three-year indeterminate sentence for an Insufficient Funds Check offense. Both sentences were imposed in June of 1981 after the Appellant had been arrested on the charges herein. The Appellant had previously failed to appear for sentencing for both Courts in February of 1981 shortly before the offense herein was committed.

"A transcript of the Sentencing Hearing in the Appellant's case has been made part of the record herein as well as the Pre-Sentence Reports prepared on all three defendants. Copies of the Convictions entered against the two co-defendants have also been made part of the record herein."

Appellant's Brief, pp. 1–2.

As to the sentencing hearing, the State's brief tells us that "In passing sentence, the district court focused on the nature of the crime, the need to protect society, the savageness of the robbery, and the defendant-appellant's prior record." State's Brief, p.

2. The appellant's brief, as it touches on that hearing, is commendably candid:

"At the time the Appellant was sentenced on the present offense he was serving a five-year indeterminate sentence for a Burglary offense as well as a concurrent three-year indeterminate sentence for an Insufficient Funds Check offense. Both sentences were imposed in June of 1981 after the Appellant had been arrested on the charges herein. The Appellant had previously failed to appear for sentencing for both Courts in February of 1981 shortly before the offense herein was committed."

On uniformity of sentencing, the appellant's brief invites our attention to the State's brief in *State v. Greene*, 102 Idaho 897, 643 P.2d 1067 (1982), a pertinent portion of which was set out in the concurring opinion of Bistline, J.:

" 'Whether or not a sentence may be increased on appeal depends in part on the rationale behind sentence review at the appellate level. There appear to be two fundamental arguments for sentence modification on appeal: (1) The sentence does not meet the crime or the circumstances of the case; and (2) Society is best served by an even-handed administration of punishment throughout the State, requiring the appellate court to work toward sentence uniformity for cases involving similar crimes and circumstances.' "

102 Idaho at 899, 643 P.2d at 1069.

That same opinion went on to remark: "At that point the State notes, and correctly so, that this Court has not yet embarked on an attempt to create uniformity in sentences through appellate overview, noting as 'some authority to the contrary,' those cases compared in the dissenting opinion in *State v. Adams*, 99 Idaho 75, 577 P.2d 1123 (1978). The dissent in *Adams* was quoted for the proposition therein advanced that '[t]he undesirable disparity of sentences, so much decried by all commentators, can be alleviated if the Court looks to the seriousness between different categories of crimes as well as to the aggravating or mitigating circumstances present within a single category of crime,' 99 Idaho at 79, 577 P.2d at 1127, and the fact that disparities create ' "demoralizing and anti-rehabilitative effects on prisoners who receive harsher sentences than others in comparable situations." ' 99 Idaho at 82, 577 P.2d at 1130 (quoting Dawson, Sentencing 216 (1969)."

102 Idaho at 899, 643 P.2d at 1069.

It is thus seen that in *Greene* it was the State which submitted that appellate courts have the responsibility of striving for uniformity on a statewide basis, and acknowledged that disparities in sentencing wreak an adverse effect on those who have been handed harsher sentences than others. Accordingly, if there is merit in the State's *Greene* philosophy, in challenging the sentence imposed in *Giese*, his attorney is on sound ground. Here the disparity could not be more apparent. It is not a statewide situation, but three defendants involved in the commission of the *same* criminal act who were sentenced by the same district judge—an apparent prima facie case of disparity. A perusal of the record discloses that Jones admitted being the person who entered the house and beat the victim with a candlestick. Jones and Giese were sentenced on the same day. Jones, the assailant, who stood trial and was convicted of first degree robbery and burglary, received five years less sentence than Giese, who pleaded guilty to burglary. Minick, sentenced two weeks later, was the only defendant whose sentence was softened with 120-day retained jurisdiction, and thereafter released on probation. The detectives, who investigated the crime, recommended that Giese and Minick *not* receive lesser sentences than meted out to Jones. The courts did give reasons for the sentence imposed upon Giese, but those reasons did not explain the disparity in the two sentences imposed on the very same day, other than mentioning to Giese that he had a prior record. But then the court stated: "I think a long term sentence to the particular crime involved should be entered." Counsel for Giese points to other language as

demonstrating that the court was acting under the belief that Giese was responsible for the violence of Jones:

"Mr. Giese, I can agree with many things that Mr. Lynn says in your regard. But it still strikes me and I can't change this, that this was a terrible, savagely planned act, such that society can't ignore.

"Now, accepting everything your counsel says is true, there is no question you aided and engineered a dumb kid to go in that place to shoot a man with a can of mace, at least if nothing else. Now, how much you engineered it and who was the dominating party, I would not know. I heard a lot of different stories on that but I don't consider it.

"I don't think you realize how I feel, and I can't help but feel that way about what would happen if you had just shot him with a can of mace? A man can get heaving sick, he can get ill, he can have a lot of problems from this mace. He can die from it at his age."

Appellant's Brief, pp. 7–8.

The record before us mainly consists of pre-sentence investigation reports of the background of the three defendants and the history of the crime supplied by the police officers. This record clearly supports appellant's contention of sentencing disparity. The record also supports the contention that Giese was sentenced for robbery, a charge which was dismissed, and not for the burglary to which he pleaded guilty pursuant to plea bargaining. A nice question which the Court's opinion does not answer is whether, on a guilty plea to burglary, the court may properly consider and utilize evidence in the pre-sentence report all of which has to do with robbery.

In *State v. Greene*, the State was the appellant; it argued there that the district court had been overly lenient in fining Greene $5,000 and placing him on a five-year probation. The purpose of the State's appeal was indeed to pursue "an even-handed administration of punishment throughout the State, requiring the appellate courts to work toward uniformity for cases involving similar crimes and circumstances." *Greene*, 102 Idaho at 899, 643 P.2d at 1069. The thrust of that appeal was to urge the court into increasing sentences—which the majority turned aside. For my part, not disagreeing in the slightest with the State's position, I used the occasion to suggest that the "proposition properly should be submitted to the legislature, as suggested in the *Adams* dissent," *see State v. Adams*, 99 Idaho 75, 577 P.2d 1123 (1978), and went on to add that "I do believe that upward modification of a sentence should not be an issue on appeal unless the defendant by his appeal opens the subject." *Greene, supra,* 102 Idaho at 900, 643 P.2d at 1070.

All of which brings me to express my own view that the defendant here has a valid claim that the goal of uniformity was *not* advanced in the disparate sentencing of the three defendants who, but for the Grace of God and the victim's own indomitability might all have been guilty of murder. The message to send in this case, however, is not necessarily to reduce this defendant's sentence, nor to affirm it, but rather to express concern with the lesser sentences meted out to the other two defendants, and to lament further that the legislature has taken no action whatsoever to provide that the county prosecutors may appeal sentences challenged as being so lenient as to discourage and inhibit uniformity. Unless this Court as a whole endorses the policy which was advanced by the State in *Greene,* and the policies which have been set by the Idaho Court of Appeals, there is little hope of catching the legislative eye. Agreeing with the older gentleman who was brutally beaten in this case, and the two detectives who, knowing more than anyone about the facts and circumstances, in essence recommended equal sentences for the three defendants, I am much disturbed this day that the Court does not see fit to at least even up the sentences meted out to Giese and Jones. Jones' sentence cannot be increased, but Giese's sentence can be reduced. While it is true that Giese had a prior criminal

record, and while it is also true that Giese, a drifter from California, had no Idaho people to speak out on his behalf other than court appointed counsel, it is equally true that Giese has already paid his debt to society for those prior offenses. Nothing in the interests of good criminal justice administration is advanced by our decision today.