THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES RAY YOUNG, Defendant-Appellant.

Fourth District   No. 13133

Opinion filed June 3, 1976.—Rehearing denied July 26, 1976.

Alfred L. Levinson, of Chicago, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (J. William Roberts, Assistant State's Attorney and G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On January 10, 1974, defendant-appellant James Ray Young was indicted for the murder of one Abraham Phillips. His first trial for the offense was terminated by order of the trial judge on April 13, 1974, because the jury was unable to reach a verdict. Defendant was then retried, and on May 21, 1974, was convicted in trial before a jury. Defendant was sentenced to a term of 80 to 240 years.

Defendant contends that in the second trial he was deprived of his constitutional right to be represented by counsel of his choice. We agree, reverse and remand for a new trial.

Following the termination of the first trial the following occurred (all dates are referenced to the year 1974): On April 22, the court ordered that the new trial was to commence on May 13. On April 30 the defendant filed a motion seeking a continuance until June 5. The motion was filed by attorney Alfred Levinson of the firm of Smith, Reilley, Bell, Weinberg and Levinson. The motion was supported by Levinson's affidavit which detailed his physical condition which rendered him incapable of commencing the trial on May 13. The affidavit also related that portions of the transcript of the original trial ordered by Levinson had not been delivered. The names and addresses of the physicians treating Levinson for the described ailments were set forth. The motion for continuance was argued May 1. Appearing for the defendant was attorney Smith who was also a member of the firm. The State's Attorney appeared and vigorously opposed the motion. Smith advised the court that the defendant wanted Levinson, and no one else to try the case, and that Levinson was physically incapable of commencing the trial on May 13. He offered to supply the court with affidavits of the physicians so as to arrange for the taking of their depositions. The defendant was sworn and testified that Levinson was his attorney, that he had confidence in him, that he wanted no one else to try the case and that he would not "accept" any other attorney.

The State's Attorney argued that the only eyewitness to the crime was one Fillion, who had testified at the first trial. He stated to the court that Fillion had previously undergone surgery which resulted in the removal of a lung because of a cancerous condition, that Fillion was scheduled to enter a veteran's hospital on May 16, and that Fillion might never be able to testify after that date. He argued that "* * * a grave miscarriage will occur in this case if the State is not permitted to put its case on with the only eyewitness to the crime in a position where he can testify." Smith also argued that since Fillion had testified at the first trial his recorded testimony could be read to the jury in the second trial if it developed that Fillion was unavailable. The court responded that "I can't make the State put on that evidence." The court, in denying the motion for continuance, made the following observations: "* * * as I see it, if I grant a continuance and the star witness for the State dies, as he says he is dying, and can't be here after May 15th, this defendant goes free. If I don't grant the continuance and require him to go to trial with your firm, and I made an error * * * and I could be making it—I don't know—making him go to trial with a lawyer he doesn't want, then that case is going to be reversed. * * *either way I go this defendant is going to either get acquitted or if he's found guilty, it's going to be reversed * * * and if I deny the State the right to go to trial with * * * when it's set because the star witness is dead or will die after that and can't be available, he's going

to go free then \* \* \* I know the rule, but I can't make him do that. It's his star witness \* \* \* I imagine he wants the jury to see this witness and not hear words from some third person reading a transcript." (At which point the State's Attorney stated "That's correct, your honor.") The court went on to state " \* \* \* I can see that either way I go there is going to be a miscarriage of justice, possibly \* \* \* if it wasn't for this witness who is dying, I would quickly grant it \* \* \* I'm saying that I'm perfectly aware of the possibility that I'm forcing the defendant to go to trial with a lawyer in a firm that he had represent him that he doesn't want, \* \* \* but I don't see any \* \* \* I don't see any out from the situation." Smith then argued that " \* \* \* \* we are going to have to prepare completely a new case from scratch \* \* \*." To which the court responded, "I understand it. *But what I have said here, I think, still stands, that if I grant the continuance he isn't going to get tried so he's going to go free.*" (Emphasis added.) The motion for continuance was then denied. The second trial was actually commenced on May 14.

*It is* clearly apparent that the trial judge considered himself to be confronted with a situation. in which the granting of the continuance would result in the defendant either being acquitted or not brought to trial. Given the facts presented to him, coupled with the State's argument, that analysis is comprehensible. What the trial judge did *not* know, and what was never implied nor revealed to him at this juncture is demonstrated by the following facts established by the record.

On May 7, some six days following the hearing on and denial of, defendant's motion for continuance, the State filed a "Motion for Protective Order" as to identity of witness for the State. The motion alleged that the prospective witness was in fear of his life if his name was disclosed. The motion showed mailing of a copy to defendant's attorney on the date the motion was filed. On the following day the motion was allowed. Defendant's counsel was not present. The trial commenced on May 14. At the end of the proceedings on May 15, the name of the protected witness, one Dennis Beach, was revealed to defendant. The State could not locate Beach and he did not appear on the following morning May 16 nor on May 17. The State then moved for a continuance because of its inability to find Beach and the case was continued until the following Monday, May 20. The content of Beach's testimony was not indicated to defendant until May 20 when Beach appeared. It was then revealed that Beach would testify (and later did so testify during the day of May 20) that on two previous occasions he had been a cellmate of defendant Young in the Sangamon county jail. That Young had offered him $2000 to kill one Stephen Richardson, stating that he (Young) believed Richardson would be a crucial witness for the State, and also described to Beach how he (Young) had shot and killed Phillips.

The record also establishes that Beach had been sought out by two police officers on either April 28 or 29, related his story to them and also to the State's Attorney. The State, then, was aware of the fact that they had a witness who would testify to a confession made by Young in addition to the other inculpatory statements above noted. A brief reference to the above-quoted remarks of the trial judge demonstrates that he was called upon to decide the defendant's motion for continuance when he was not made aware of all the facts pertinent to that decision. It is a compelling inference that, had he been in possession of that information, he would not have concluded, as he obviously did, that the State's case was critically dependent upon the testimony of Fillion, that Fillion was *the* "star witness" and that absent his testimony Young would either be acquitted or, perhaps, not even brought to trial.

We recognize that, absent a specific order of the court, the State was not obligated by any rule of law or procedure, to reveal to defendant the content of Beach's testimony which concerned statements and a confession not made to a law enforcement officer. That defendant is constitutionally entitled to counsel of his choice is undeniable, although exercise of the right cannot be permitted to bring about an indefinite thwarting of the administration of justice. (*People v. Green*, 42 Ill. 2d 555, 557, 248 N.E.2d 116.) If the State, under the circumstances demonstrated here, desires to secure a ruling involving that right, and in the process withholds vital information from the judge responsible for the decision, it risks the result which obtains here. There are various means available to the State for the protection of a witness. It would seem preferable to invoke one of those methods rather than to procure an order which deprives a defendant of a basic constitutional guarantee.

The record of the first trial of Young, which is part of the record on appeal in this case, establishes that the direct examination of Fillion involved a detailed and extensive elicitation of his knowledge of the offense. This was followed by a vigorous and lengthy cross-examination by defendant's attorney Levinson. The testimony covers some 124 pages. This evidence, in the event of Fillion's unavailability at the second trial, bears the "indicia of reliability" which would authorize its being read to the jury, and it could not be maintained that, in such event, the defendant's right to confront the witness had been denied. *Mancusi v. Stubbs*, 408 U.S. 204, 33 L. Ed. 2d 293, 92 S. Ct. 2308; also see *People v. Burton*, 6 Ill. App. 3d 879, 884, 885; 286 N.E.2d 792, *cert. denied*, 411 U. S. 937, 36 L. Ed. 2d 399, 93 S. Ct. 1917. We also note that Supreme Court Rule 414 (Ill. Rev. Stat. 1973, ch. 110A, par. 414) makes explicit provision for the preservation and use of the testimony of a witness who may be unavailable during a subsequent criminal trial.

We therefore hold that defendant was denied his constitutional right to

be represented by counsel of his choice. This issue being dispositive, there is no need to discuss other assignments of error involving matters which are not likely to reoccur in the new trial.

Judgment reversed, cause remanded for new trial.

TRAPP, P. J. and GREEN, J., concur.